UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW R. SWANSON, | No. 1:23-cv-6-KJM-KJN |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS |
| v. | (ECF No. 32.) |
| JUSTIN R. HARRISON, et al., | |
| Defendants. | |

Plaintiff Matthew R. Swanson maintains claims of trademark infringement, counterfeiting, dilution, and related state law claims against defendants Justin R. Harrison, Samantha J. Harrison, Rockers Guitar, Ltd., The British Pedal Company, London Vintage Guitars, Denmark Street Guitars, and Hanks Guitar Shop. (ECF No. 2.) Presently pending before the court is plaintiff's motion for default judgment against all defendants.[1] (ECF No. 32.) Defendants have not opposed plaintiff's motion or otherwise made an appearance in this action, and so default has been entered against each by the Clerk of Court. (See ECF Nos. 10-43.)

The undersigned recommends plaintiff's motion for default judgment be GRANTED, and defendants be ENJOINED from using plaintiff's trademarks as described below.

///

---

[1] This motion is referred to the undersigned by Local Rule 302(c)(19) for the entry of findings and recommendations. See 28 U.S.C. § 636(b)(1)(B).

1

I. **Factual Background**[2]

The DUMBLE marks came into use by Mr. Dumble in 1969 as branding for his goods, and the associated mark "OVERDRIVE SPECIAL" came into use in 1972. These marks were used continuously by Mr. Dumble until his death in January of 2022, identify the source of the DUMBLE Goods, and are inherently distinctive or have acquired secondary meaning. DUMBLE and OVERDRIVE SPECIAL branded musical equipment are prized by many famous guitarists, have significant good will and fame in the industry, are highly sought after, and are very expensive. Mr. Dumble registered two marks with the U.S. Patent and Trademark Office: Registration numbers 2892356 (application February 14, 2002; registered October 12, 2004) and 2909913 (application June 12, 2003; registered December 14, 2004[3]). These registrations cover use of the DUMBLE and OVERDRIVE SPECIAL marks on or in connection with, among other things, amplifiers, loudspeakers, preamplifiers, power amplifiers, signal processing amplifiers, reverberation units, amplifier cords, foot pedal controls, switches, transformers, amplifier covers, amplifier volume and tone controls, speaker cabinets, electric guitars, and guitar necks, heads, bodies, pickups, pickup covers, pickguards, and custom finishes.

Upon Mr. Dumble's death, his heirs became the rightful owners of Mr. Dumble's IP, including the DUMBLE and OVERDRIVE SPECIAL marks. On February 27, 2022, the heirs assigned these IP rights to plaintiff, a close associate of Mr. Dumble. Thus, plaintiff is the current owner of all rights, title, and interest in the "DUMBLE" and "OVERDRIVE SPECIAL" marks for use in connection with the goods described in the USPTO registrations.

Justin and Samantha Harrison own, control, or are otherwise employed by the entity

---

[2] All facts derive from the complaint unless otherwise noted. (See ECF No. 2.)

[3] The complaint and briefing contain an apparent scrivener's error, as each lists the date of registration for the -913 mark as 2002. (See ECF No. 2 at ¶ 24.) However, the 2004 date is confirmed as the correct registration date via a USPTO trademark search. (See ECF No. 45-3 at 5). The USPTO registration information is judicially noticeable under Fed. R. Evid. 201. See, e.g., Threshold Enterprises Ltd. v. Pressed Juicery, Inc., 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) ("Materials in the online files of the USPTO and other matters of public record are proper subjects of judicial notice."); Caiz v. Roberts, 382 F. Supp. 3d 942, 947 (C.D. Cal. 2019) (taking judicial notice of "File History" downloaded from USPTO website).

defendants in this case (Rockers Guitar, British Pedal Company, London Vintage Guitars, Denmark Street Guitars, and Hanks Guitars).  The Harrisons use British Pedal to manufacture guitar amplifiers and components; the other entity defendants sell and distribute these products.  These products bear a mark that is either identical to, or confusingly similar to, plaintiff's DUMBLE mark.  Specifically, British Pedal advertises and sells at least two guitar pedals—the "Dumble Silverface Pedal" and the "Dumble Blackface Pedal"—that include the DUMBLE marks, the OVERDRIVE SPECIAL mark, and the DUMBLE trade dress.  Also, London Vintage, Denmark Street, and/or Hanks Guitar sell "Dumble Overdrive Specials" which are not DUMBLE goods.  This is done to deceive customers into believing that defendants' products are genuine or otherwise authorized by plaintiff, which they are not.  Defendants sell these goods through (among other places) multiple distributors located in California.  (See also ECF Nos. 45-2 and -3.)  Additionally, on August 2, 2022, Justin Harrison attempted to register with the USPTO a DUMBLE mark (Ser. No. 97530301) and moved for cancellation of plaintiff's registrations.  This was denied with prejudice.[4]

## II.     Procedural Posture

Plaintiff filed a complaint on December 30, 2022, asserting ten claims against defendants related to plaintiff's trademark claims.  (ECF No. 2.)  In January of 2023, plaintiff served notice of his claims on Justin Harrison by submitting the papers on the Director of the U.S. Patent and Trademark Office, as per 15 U.S.C. § 1501(e).  (See ECF No. 11 at 2, see also ECF Nos. 10, 29, 30.)  In March of 2023, plaintiff personally served all defendants except Justin Harrison pursuant to Article 10(c) of the Hague convention, given these defendants' residence in the United Kingdom.  (See ECF No. 11 at 2; see also ECF Nos. 13-19.)  No defendant answered or otherwise appeared, and so the Clerk of Court entered default against each defendant.  (ECF Nos. 27, 31.)  Thereafter, plaintiff moved for default judgment on all claims against each defendant, and no defendant opposed.  (ECF No. 32.)  Out of an abundance of caution, the undersigned provided defendants with one final opportunity to respond, and ordered plaintiff serve the court's order on

---

[4] Plaintiff requests judicial notice of the USPTO proceedings under Fed. R. Evid. 201.  (See ECF No. 45-3, Exhibit 3.)  The request is granted.  See, e.g., Threshold, 445 F. Supp. 3d at 146.

defendants.  (ECF No. 35.)  Plaintiff did so, and no responses were filed.  (ECF Nos. 36-43.)  On the court's order, plaintiff filed supplemental briefing and declarations.  (ECF Nos. 44, 45.)

### III.     Legal Standards for Default Judgments

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment is within the district court's discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

In making a default judgment determination, the court considers the following factors:

1. the possibility of prejudice to the plaintiff,
2. the merits of plaintiff's substantive claim and the sufficiency of the complaint;
3. the sum of money at stake in the action;
4. the possibility of a dispute concerning material facts;
5. whether the default was due to excusable neglect, and
6. the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986) (noting defaults are ordinarily disfavored).

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law).  A party's default conclusively establishes that party's liability, but it does not establish the amount of damages.  Geddes, 559 F.2d at 560.

IV. **Analysis**

**A. Appropriateness of the Entry of Default Judgment Under the Eitel Factors**

The undersigned finds the Eitel factors weigh in favor of the entry of a default judgment against defendants and so recommends default judgment be entered with respect to liability.

1. Possibility of Prejudice to the Plaintiff

The first Eitel factor considers whether plaintiff would suffer prejudice if default judgment were not entered, as prejudice to a plaintiff weighs in favor of a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiff was unsuccessful in his attempts to press his claims against defendants for their alleged infringement of the DUMBLE and OVERDRIVE SPECIAL marks. Defendants have been silent in this matter—despite ample notice. Thus, plaintiff would be left without any other recourse against defendants should default not be entered. Accordingly, the first Eitel factor favors the entry of default judgment.

2. Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

The second and third factors (the merits of the substantive claims and the sufficiency of the complaint) are considered in tandem, due to the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

Based on the analysis below, the court finds these factors weigh in favor of entering default judgment against defendants on these claims asserted in the complaint: (1) trademark infringement, (3) trademark counterfeiting, and (5) trademark dilution.[5] (ECF No. 2.)

---

[5] Previously, the court noted the overlap of some of plaintiff's claims, especially given the fact that he only seeks injunctive relief against defendants. The court requested supplemental briefing on the issue. (ECF No. 44.) Plaintiff responded, agreeing that many of the claims overlapped, and that the core of his allegations concern his claims for (I) federal trademark infringement, (III) federal trademark counterfeiting, and (V) federal trademark dilution. (See ECF No. 45 at 6-8.) Thus, the court concentrates its analysis on the merits of Claims I, III, and V, and recommends dismissal of the remaining seven claims (contributory infringement and counterfeiting, unfair competition, and state-law infringement, dilution, and unfair competition). See, e.g., Reflex Media, Inc. v. Chan, 2021 WL 5936912, at *9 (C.D. Cal. June 4, 2021) (dismissing the contributory and vicarious trademark infringement claims after judgment on the trademark infringement claim).

### a. Jurisdiction

The undersigned finds the court has jurisdiction over this action and over the subject matter hereof pursuant to 28 U.S.C. §§ 1331 and 1338, given the presence of federal questions under 15 U.S.C. § 1051; the court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, given the relatedness of the claims.

Further, the court has personal jurisdiction over defendants given their purposeful direction of activities to California. (See ECF No. 2 at ¶ 41 (detailing allegations that defendants offered infringing goods via Reverb.com under the London Vintage Guitars business name, sold an infringing product via this website); see also ECF Nos. 43-2 and -3 (detailing defendants' targeting of California music dealerships, trade shows, and consumers). Herbal Brands, Inc. v. Photoplaza, Inc., 72 F.4th 1085, 1094–95 (9th Cir. 2023) (finding purposeful direction to be the proper test for plaintiff's "tortious" act of trademark infringement, and finding personal jurisdiction where out of state defendants sold goods through an interactive website to consumers in the forum as part of its regular course of business, and where defendants controlled the distribution of those products by selling directly to forum consumers); Ayla, Ltd. Liab. Co. v. Alya Skin Pty. Ltd., 11 F.4th 972, 984 (9th Cir. 2021).

### b. Trademark Infringement and Counterfeiting, 15 U.S.C. §§ 1114 and 1116

To state a claim for trademark infringement, the complaint must allege: (1) ownership interest in a valid, protectable mark, and (2) the likelihood of the infringing mark being confused with the plaintiff's mark. OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc., 897 F.3d 1008, 1022 (9th Cir. 2018); see also UL LLC v. Space Chariot Inc., 250 F. Supp. 3d 596, 607 (C.D. Cal. 2017) (noting that infringement claims require, in addition to the elements above, use of the mark without the owner's consent). Relatedly, suits may be brought regarding counterfeit marks "in connection with the sale, offering for sale, or distribution of goods or services." See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., 658 F.3d 936, 945-46 (9th Cir. 2011). Counterfeiting is a more specialized case of trademark infringement because a counterfeit "is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. The willful use of a counterfeit mark allows for statutory damages, treble

damages, pursuant to 15 U.S.C. § 1117.  Under either claim, an injunction against future use of the mark is allowed and in the public interest of avoiding confusion to consumers.  Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc., 559 F.3d 985, 993 (9th Cir. 2009); 15 U.S.C. § 1116.

Here, the complaint sufficiently states facts indicating plaintiff has an ownership interest in the DUMBLE and OVERDRIVE SPECIAL marks, which are protected.  (ECF No. 2 at ¶¶ 24-28 (facts about Mr. Dumble's registration of the marks, including the registration numbers, as well as plaintiff's ownership and continued use thereof).  Further, the complaint sufficiently states facts to meet the circuit's test for confusion.  See AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979) (eight non-exhaustive factors for likelihood of confusion), abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prod., 353 F.3d 792, 810 n.19 (9th Cir. 2003). This includes facts about:  (i) the strength of the mark (ECF No. 2 at ¶ 22-23); (ii)/(iii) the proximity and similarity of the goods (id. at ¶¶ 29-40 (including photographic comparisons of the parties' goods)); (v) similarity of the marketing channels (id. at ¶ 41); and (vii) defendants' intent (id. at ¶¶ 10 and 31-46 (facts about defendant Justin Harrison's knowledge of plaintiff's registered marks and prior infringement, as well as facts about defendants counterfeiting and use of the marks in a confusing, unlicensed manner).  Given that the complaint sufficiently alleges these infringing acts by Justin and Sam Harrison, and given the entity defendants are sufficiently alleged as alter egos of the Harrisons, plaintiff's complaint adequately states a claim for trademark infringement and trademark counterfeiting against all defendants.

    **c.  Federal Trademark Dilution**

To state a claim for trademark dilution, a plaintiff must allege the defendant used an identical (or nearly identical) mark as plaintiff's protected mark.  See, e.g., Levi Strauss & Co. v. Toyo Enter. Co., 665 F. Supp. 2d 1084, 1096 (N.D. Cal. 2009).  Further, federal trademark dilution requires a showing that:  (1) plaintiff's mark is famous; (2) defendant is making commercial use of the mark in commerce; (3) defendant's use began after the plaintiff's mark became famous; and (4) defendant's use presents a likelihood of dilution of the distinctive value of the mark.  Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 874 (9th Cir. 1999).  Injunctive

relief is available for trademark dilution.  See id.

Here, the complaint sufficiently states facts indicating plaintiff has an ownership interest in the DUMBLE and OVERDRIVE SPECIAL marks, which are protected.  (ECF No. 2 at ¶¶ 24-28 (facts about Mr. Dumble's registration of the marks, including the registration numbers, as well as plaintiff's ownership and continued use thereof).  Further, the complaint sufficiently states facts to meet the circuit's test for dilution, including:  (1) the famous nature of the marks (id. at ¶ 23); (2)/(3) defendants' commercial use of the mark well after plaintiff's mark became famous (id. at ¶¶ 29-46 (including photographic comparisons of the parties' goods), id. at ¶¶ 22, 29, 88 (detailing the timeline of plaintiff's and defendants' actions)); and (4) defendants' use presents a likelihood of dilution in the distinctive value of the mark (id. at ¶¶ 29-46 (facts about defendants' use of the mark, the quality of defendants' products, and allegations of blurring and tarnishing of plaintiff's mark)).  Given that the complaint sufficiently alleges these infringing acts by Justin and Sam Harrison, and given the entity defendants are sufficiently alleged as alter egos of the Harrisons, the complaint adequately states a claim for trademark dilution against all defendants.

         3.   Sum of Money at Stake

In weighing the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of the defendant's conduct."  PepsiCo, Inc., 238 F.Supp.2d at 1176-77.  This factor weighs against default judgment when a large sum of money is at stake.  Eitel, 782 F. 2d. at 1472.

Here, plaintiff does not seek any money damages against defendants.  Instead, plaintiff merely seeks a permanent injunction against defendants barring them from selling products that infringe on plaintiff's DUMBLE and OVERDRIVE SPECIAL marks.  (Cf., ECF No. 2 at 28 (requesting in the complaint money damages under 15 U.S.C. § 1117 plus attorney's fees and costs); with ECF No. 32 at 13 ("By this motion, plaintiff prays solely for injunctive relief.  As such, the sum of the money at stake ($0) weighs in favor of granting the motion.").)  The court concurs, finding this relief weighs in favor of default judgment.  Avery Dennison, 189 F.3d at 874 (noting the availability of injunctive relief).

///

      4. The Possibility of a Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting his claims. Further, plaintiff's marks have been confirmed via a search of the USPTO's database and reliance on plaintiff's exhibits, of which the court has taken judicial notice. The court may assume the truth of well-pleaded facts in the complaint following the clerk's entry of default, and thus, the court now finds there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); PepsiCo, Inc., 238 F. Supp. 2d at 1177. The undersigned finds this factor favors the entry of a default judgment.

      5. Whether the Default was Due to Excusable Neglect

Upon review of the record before the court, the undersigned finds the default was not the result of excusable neglect. Pepsi Co, Inc., 238 F. Supp. 2d at 1177. Defendants were properly served with notice of the complaint, both via service on the Director of the U.S. Patent and Trademark Office as per 15 U.S.C. § 1501(e) for the claims against Justin Harrison, and by personal service pursuant to Article 10(c) of the Hague convention for the remaining defendants. (See ECF No. 11 at 2, see also ECF Nos. 10, 13-19, 29, 30.) Further, all defendants received personal service—including Justin Harrison[6]—of the court's order vacating the hearing on plaintiff's motion and providing an additional opportunity to respond. (ECF Nos. 35-43.) Accordingly, there is no indication defendants' default resulted from excusable neglect; this factor favors the entry of a default judgment.

      6. Policy of Deciding Cases on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see

---

[6] (See ECF No. 37, the affidavit of service on Samantha Harrison, which states the court's order was given to Justin Harrison.)

also e.g., Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Here, although the undersigned is cognizant of this policy—it is unavailable here because defendants have not responded. This factor does not weigh against entry of default judgment.

### B. Liability Conclusion, Relief Sought

Pursuant to the above analysis, the Eitel factors weigh in favor of entering default on liability against all defendants. Turning to the requested relief, plaintiff only seeks a permanent injunction to protect his ownership and use of the marks and to protect the public from the confusion and harm caused by defendants' sales of counterfeit goods.[7] (ECF No. 32 at 14.) The court finds the requested relief appropriate. 15 U.S.C. § 1116.

## V. Conclusion

Accordingly, the undersigned hereby FINDS for purposes of this case:

1. Plaintiff is the owner of all rights, in and to the following trademark registrations: (1) U.S. Reg No. 2892356; and (2) U.S. Reg. No. 2909913.
2. Plaintiff has complied in all respects with the laws governing trademarks and secured the exclusive rights and privileges in and to these trademarks.
3. Plaintiff is the owner of all rights, titles, and interest in:
    a. The DUMBLE Mark (including but not limited to the word DUMBLE in standard character and depicted in the stylizations [as noted in ¶ 22 of the operative complaint] (collectively the standard character mark and various stylizations referred to herein as the "DUMBLE Marks") on electric guitar amplifiers and components thereof and therefor (the "DUMBLE Goods").
    b. The mark OVERDRIVE SPECIAL (the "OVERDRIVE SPECIAL Mark"), on the DUMBLE Goods.
    c. Distinctive fonts, color schemes, dials, switches, and other stylistic elements which

---

[7] In briefing, plaintiff states that "[w]hile [he] is likely entitled to prove economic damages in the form of lost profits, plaintiff specifically elects to waive any rights to damages. Without the ability to conduct meaningful discovery (due to defendants' refusal to participate in litigation) or enforce money judgments overseas in a cost-effective manner, the benefit of money damages is simply not worth the cost." (ECF No. 32 at 14.)

have been incorporated into the DUMBLE Goods (the "DUMBLE Trade Dress").

    d. The DUMBLE Trade Name.

4. The DUMBLE IP (i.e. the DUMBLE Marks, the OVERDRIVE SPECIAL Mark, and the DUMBLE Trade Dress) and the DUMBLE Trade Name are each valid and enforceable, and have not been abandoned.

5. The DUMBLE Mark and the OVERDRIVE SPECIAL Mark are each "famous" under 15 U.S.C. § 1125(c).

6. Defendants have distributed, sold, and offered for sale counterfeit merchandise which infringes upon the DUMBLE IP.

## RECOMMENDATIONS

Therefore, based upon the foregoing facts, the court RECOMMENDS judgment be entered in this action as follows:

1. Defendants and each of their agents, representatives, employees, officers, attorneys, successors, assigns, and affiliates (including any persons in privity or active concert or participation with any of them from) be permanently enjoined from:

    a. using in any manner the DUMBLE IP, or colorable imitations thereof, in the manufacturing, distributing, importing, exporting, offering for sale, selling, or advertising any and all of goods, including but not limited to Defendants' Goods, the DUMBLE Goods, or any goods or services that are related thereto;

    b. expressly or impliedly representing that any goods manufactured, distributed, imported, exported, offered for sale, sold, or advertised by Defendants are sponsored, authorized, or licensed by Plaintiff by use of copies or colorable imitations of the DUMBLE IP, or otherwise;

    c. doing any act, including but not limited to using in any manner the DUMBLE Marks or the OVERDRIVE SPECIAL Mark, that would in any way dilute or be likely to dilute Plaintiff's famous DUMBLE Marks and famous OVERDRIVE SPECIAL Mark;

    d. prosecuting or maintaining any applications for registration, or registrations of,

      any of the DUMBLE IP;

  e. opposing, challenging, or otherwise contesting Plaintiff's rights in, or the validity or enforceability of, the DUMBLE IP, including but not limited to contesting with any trademark office any registrations of, or pending or future applications or registrations by or of, Plaintiff to register the DUMBLE Marks, the OVERDRIVE SPECIAL Mark, or DUMBLE Trade Dress.

2. Defendants be directed to file with the court and serve on plaintiff within thirty (30) days after issuance of an injunction a report in writing and under oath setting forth in detail the manner and form in which defendants have complied with the injunction, pursuant to 15 U.S.C. § 1116(a).

3. Judgment be entered against all defendants pursuant to Rule 54(a) of the Federal Rules of Civil Procedure;

4. The court retain jurisdiction of this action to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to implement and enforce the provisions of this judgment.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within seven (7) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  January 16, 2024

                KENDALL J. NEWMAN
                UNITED STATES MAGISTRATE JUDGE

swan.6